A. V. COLE and others, appellants from the decree of the COUNTY COMMISSIONERS.

Cumberland.    Opinion December 31, 1886.

*Ferry landing in Portland.    People's ferry.    Special Stat. 1873, c. 375. Special Stat. 1885, c. 495.    Constitutional law.    Appeal.*

The act of 1873, c. 375, which provides in section 1, "That the county commissioners of the county of Cumberland, on petition of one hundred or more citizens of said county, be and hereby are authorized and empowered to locate a public highway in the city of Portland, extending into tide waters of sufficient depth, with a good and substantial ferry way,  . . . with the right to take private property therefor, in like manner and effect as in locating other highways in said county," is constitutional.

The authority of the commissioners under that act, is not confined and limited to one petition, when the action thereon was adverse.

The doctrine of *res judicata* does not apply to the action and judgment of county commissioners in locating highways.

An appeal lies to the action of the county commissioners, under the act of 1873, c. 375.

When such an appeal has been taken from the adverse decision of the commissioners upon a petition asking them to lay out a highway from Commercial street "down said Portland pier to the end of said pier and into tide waters a sufficient distance to give a sufficient depth of water," the committee, appointed by the appellate court, do not exceed the powers conferred upon them by law, when they report that the judgment of the commissioners should be wholly reversed, and "that common convenience and necessity do require the location of said highway and ferry landing on Portland pier, in the city of Portland, as prayed for in said petition."

ON EXCEPTIONS.

The opinion states the case. The following is an abstract from the petition to the commissioners:

"The undersigned, being more than one hundred citizens of said county of Cumberland, hereby respectfully represent to your Honors that in their judgment, the public convenience and necessity require the location of a public highway in the city of Portland, commencing at a point in the centre line of Commercial street, near where a line about four feet westerly from the easterly side of a private passage way at the head of Portland Pier crosses said line of Commercial street, thence south easterly down said Portland pier to the end of said pier and into tide waters in said city, a sufficient distance to give a sufficient depth of water and to provide a good and substantial ferry-way and landing therein, suitable for the passage and accommodation of teams and passengers, as provided in chapter 375 of the special laws of the year 1873, and in chapter 495 of the special laws of the year 1885."

*Nathan* and *Henry B. Cleaves, Drummond and Drummond,* and *F. H. Harford,* for the appellants, cited: *Palmer* v. *Dayton,* 4 Cush. 270; *Eddy's Case,* 6 Cush. 28; *City of Belfast, appellants,* 53 Maine, 431; *B. & M. R. R. Co.* v. *Co. Com'rs,* 78 Maine 169; *Friend* v. *Co. Com'rs,* 56 Maine, 262; *French* v. *Co. Com'rs,* 64 Maine, 583; *Windham, Pet'r,* 32 Maine, 452; *Belfast* v. *Co. Com'rs,* 67 Maine, 530; *Powers,* v. *Mitchell* 75 Maine, 364; *Acton* v. *Co. Com'rs,* 77 Maine, 128; *Hayford* v. *Co. Com'rs,* 78 Maine, 153; *Howland* v. *Co. Com'rs,* 49 Maine, 146; *True* v. *Freeman,* 64 Maine, 573; *Clark v. Middlebury,* 47 Conn. 331; *Kennett's Pet.* 24 N. H. 139; *Day* v. *Stetson,* 8 Maine, 368; *Com.* v. *B. & L. R. R. Co.* 12 Cush. 254; *Small* v. *Pennell,* 31 Maine, 267; *Bethel* v. *Co. Com'rs,* 42 Maine, 478; *Jordan, Pet'rs,* 32 Maine, 473; *Pet. Strafford,* 14 N. H. 30; *Howard, Pet.* 28 N. H. 157.

The act was constitutional: *Com.* v. *West Boston Bridge,* 13 Pick. 195; *Middletown,* 82 N. Y. 196; *Gordon* v. *Cornes,* 47 N. Y. 617; *Fowler* v. *Bull,* 46 N. Y. 69; *Packet Co.* v. *Keokuk,* 95 U. S. 80; *Allen* v. *Louisiana,* 103 U. S. 80; *Fisher* v. *McGirr,* 1 Gray, 1; *Rochester* v. *Briggs,* 5 N. Y.

566; Cooly on Const. Lim. 178; *Warren* v. *Charlestown*, 2 Gray, 98; *Com.* v. *Clapp*, 5 Gray, 100; *Com.* v. *Hitchings*, 5 Gray, 485; *Packard* v. *Lewiston*, 55 Maine, 458; *Schwartz* v. *Drinkwater*, 70 Maine, 409.

The committe did not exceed its powers: *Harriman* v. *Co. Com'rs*, 53 Maine, 83; *Smith* v. *Co. Com'rs*, 42 Maine, 395; *Coombs* v. *Co. Com'rs*, 68 Maine, 484; Mills on Eminent Domain, §§ 274, 275; *Hunter* v. *Newport*, 5 R. I. 325; *Bristol* v. *Branford*, 42 Conn. 321; 9 Gray, 58; 3 Mass. 406; 4 Gray, 414.

*C. W. Goddard*, for remonstrants from ten towns.

*Joseph W. Symonds*, for the city of Portland.

*George E. Bird*, for Proprietors of Portland Pier.

*A. A. Strout*, for the Portland and Cape Elizabeth Steam Ferry Company.

The several remonstrants unite in resisting the acceptance of the report of the committee, and in their prayer that their exceptions may be sustained by this honorable court, mainly for the reasons set forth in this brief.

I. Because the enabling act of 1873, on which these appellant petitioners rely, was not a public, general, or permanent law of the state, of inexhaustible vitality and perpetual force; but a private and special enactment, limited in its scope and designed for a particular, specified purpose. And that its vitality was exhausted during the year of its enactment, by the final adjudication of the county commissioners of Cumberland county, without appeal, in 1873, on the petition of David Keazer and others, who availed themselves of the act and encountered an adverse final adjudication thereon by the appropriate tribunal. And that the act of 1873 has not been revived or resuscitated by the private and special act of 1885, "to incorporate the People's Ferry Company."

II. Because the act of 1873, authorizing and empowering the commissioners of Cumberland county to construct and maintain a public highway into tide waters in the city of Portland, confers no right of appeal from the decision and judgment of said

commissioners; and therefore the judgment and decision of said commissioners refusing to locate and construct the public highway and ferry landing prayed for by the petitioners is final and not subject to appeal.

III. Because the act of 1873 is unconstitutional and void for the reason that while it purports to confer upon the commissioners the right of eminent domain for the avowed purpose of a highway and landing, it nevertheless authorizes the city of Portland to use or lease portions of the same for other purposes than those of a public highway and ferry landing; so that under the terms of said act, private property may be taken ostensibly for public use, to wit, for a public highway and ferry landing, and yet portions of said property may in fact be used solely and exclusively for the private uses and purposes of individuals.

IV. Because the committee have exceeded the authority conferred on them by law and by their commission, by requiring the county commissioners to locate and construct a public highway and ferry landing down Portland Pier to the end thereof, without regard to the depth or sufficiency of water, thereby in their report encroaching upon the jurisdiction of said commissioners conferred by the act of 1873, which authorizes and empowers said commissioners to extend said highway into tide waters of sufficient depth and no farther, and confers on said commissioners the exclusive authority to determine and judicially adjudge how far into tide waters said highway shall be extended.

LIBBEY, J. The proceedings in this case were had by virtue of the act of 1873, c. 375, as modified by act of 1885, c. 495.

The act of 1873 reads as follows: "Sect. 1. That the county commissioners of the county of Cumberland, on petition of one hundred or more citizens of said county, be and hereby are authorized and empowered to locate a public highway in the city of Portland, extending into tide waters of sufficient depth, with a good and substantial ferry-way and landing therein, suitable for the passage and accommodation of teams and foot passengers, with right to take private property therefor, in like manner and effect as in locating other highways in said county."

"Sect. 2. Said highway and landing shall be governed and controlled by the city of Portland, and so much of said highway and landing as is not required for said ferry purposes, may be used or leased by said city for any other purpose."

The act of 1885, § 8, provides "that the county commissioners of the county of Cumberland shall not be called upon to locate a public highway in tide waters in the city of Portland, under the act of 1873. . . . until a double end steam ferry-boat, suitable for the carriage of teams and passengers, is put upon said ferry route, and its continuous operation secured, to the satisfaction of said county commissioners."

At the June term of the court of county commissioners of the county of Cumberland, a petition in all respects in compliance with the acts aforesaid, was presented to said court, and upon due proceedings had by said commissioners, they heard the parties interested, and at the January term of said court, reported that all the requirements of the acts aforesaid had been complied with, but they adjudged and determined that public convenience and necessity did not require the location of the highway prayed for.

An appeal was duly taken to the January term of the Supreme Judicial Court in said county, when a motion was filed by the remonstrants to dismiss the appeal on the ground that the court had no jurisdiction. This motion was overruled and a committee was appointed. To this ruling exception was taken. At the April term of said court the committee made their report, in which they "adjudge and determine that common convenience and necessity do require the location of the aforesaid highway and ferry landing on Portland pier, in the city of Portland, as prayed for in said petition, and we do wholly reverse the judgment of said commissioners."

Several objections were filed by the remonstrants to the acceptance and confirmation of the report, but four only are relied upon, and need be considered.

I. It is claimed that, inasmuch as the act of 1873 was not a general statute, but special and local in its character, enacted for a special purpose, it conferred upon the county commissioners

power to act but once under it; and that their power was exhausted by their adverse action on the petition of David Keazer and als. in 1873.

We think this objection can not prevail. The petition of Keazer and als. did not describe the way to be located in any manner, and therefore gave the county commissioners no jurisdiction to act under the statute. R. S., c. 18, § 1. Their action upon that petition was void. But we are of opinion that the act of 1873 should receive a broader construction than that claimed for it by the learned counsel for the respondents. Before its passage, the county commissioners had no power to locate a public highway in the city of Portland; nor could they locate one into tide waters. The act of 1873 removed both of these limitations upon their jurisdiction, and in these respects enlarged it to be exercised " in like manner and effect as in locating other highways in said county." Under the general statute giving them the power to locate other highways in said county, the only limitation upon their jurisdiction is that if their decision is against the prayer of the petition, no new petition shall be entertained for one year thereafter. R. S., c. 18, § 45. The doctrine of *res adjudicata* does not apply to the action of county commissioners in the location of highways. The facts and situation may be such as to require them to refuse to locate on one petition, when such changes may take place in the wants and necessities of the public as to require the location a year or two thereafter.

II. It is contended that there is no appeal given by law from the judgment of the county commissioners under the act of 1873. This contention can not be sustained. The case of City of Belfast, appellants, 53 Maine, 431, is conclusive against the respondents. The proceedings for the location of the highway under said act, are in all respects the same as in the location of other highways.

III. The third ground of objection is that the act of 1873 is unconstitutional, inasmuch as it authorizes the taking of private property for private uses. This objection is based on the second section of the act, which provides that " so much of said highway

and landing as is not required for said ferry purposes, may be used or leased by said city for any other purpose." The fallacy of this position is that it assumes that the act authorizes the taking of private property for private uses. The power conferred upon the commissioners by the act is to locate a "public highway" in Portland and into tide waters, and to take private property *therefor*, "in like manner and effect as in locating other highways in said county." The highway is to be located only when it is adjudged to be of public convenience and necessity. They can take private property only for the "public highway," as in the location of other highways. They can not take it for the use of the city.

The right given to the city by the second section is *contingent* and may never be brought into life, and that section is entirely independent of the first section. Assuming that the legislature exceeded its constitutional power in enacting the second section, it may he rejected without in any way impairing or affecting the powers granted in the first.

It is a well settled rule of law that the same statute may be in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand, while that which is unconstitutional may be rejected. *Allen* v. *Louisiana*, 103 U. S. 80; *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packard* v. *Lewiston*, 55 Maine, 456; *Schwartz* v. *Drinkwater*, 70 Maine, 409; *Fisher* v. *McGirr*, 1 Gray, 1.

In what we have said we do not mean to hold that the second section is in conflict with the constitution. If the contingency stated in the act occurs, and the city undertakes to exercise the license given by it, it will be in season to decide this question, if raised and properly brought before the court. *Packet Co.* v. *Keokuk*, 95 U. S. 89.

IV. The last objection is that the committee have exceeded the power conferred on them by law. We can see no ground for this objection. By R. S., c. 18, § 49, the committee is required, after viewing the route and hearing the parties, to report "whether the judgment of the commissioners should be in whole or in part affirmed or reversed." They reported that

the judgment of the commissioners should be wholly reversed, and "that common convenience and necessity do require the location of said highway and ferry landing on Portland pier in the city of Portland, as prayed for in said petition." The substance of this adjudication is that the whole highway should be located as prayed for. This is strictly within their legal authority. When the report is accepted and judgment entered thereon, and is certified to the court of commissioners, the case will stand precisely the same as if the commissioners had, themselves, made the same adjudication; and it, will become their duty to carry the judgment of the appellate court into full effect, as if made by themselves. The water terminus of the highway is described in the petition, "the end of said pier and into tide waters to give a sufficient depth of water." It will be the duty of the commissioners in making the location, to fix the precise termini of the highway. In doing so, they are not required by the judgment of the appellate court, to adhere strictly to the bounds named in the petition; but they must conform substantially to them, so as to effectuate the purpose sought. R. S., c. 18, § 1.

*Exceptions overruled.*

PETERS, C. J., WALTON, VIRGIN, EMERY and HASKELL, JJ., concurred.